# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# LEWIS T. BABCOCK, JUDGE

Civil Case No. 06-cv-02257-LTB-MJW

PAUL ALUDO,

      Plaintiff,

v.

DENVER AREA COUNCIL, BOY SCOUTS OF AMERICA,
and
BOY SCOUTS OF AMERICA, NATIONAL COUNCIL,

      Defendants.

_____

# ORDER
_____

This employment discrimination case is before me on Defendant, Denver Area Council, Boy Scouts of America's ("DAC"), Motion for Summary Judgment and supporting Brief [**Docket ## 62, 63**], Plaintiff, Paul Aludo's, Response [**Docket # 105**], and DAC's Reply [**Docket # 112**]. Oral argument on the present motion was held on July 25, 2008. After consideration of the arguments made at the July 25, 2008, hearing, the motion, the papers, and the case file, and for the reasons stated below, I GRANT in part and DENY in part DAC's Motion for Summary Judgment [**Docket # 62**].

## I. BACKGROUND

The alleged relevant facts are as follows. Plaintiff is African-American and over the age of 40. Plaintiff was hired by Boy Scouts of America, National Council ("BSA") in February 1986 and began working for DAC in January 1994. At the time of his termination, Plaintiff was

employed as a Field Director.

On or shortly after March 11, 2005, Plaintiff was advised by the Scout Executive of the DAC—Mr. Herrmann—that Plaintiff's current position as Field Director was being eliminated due to budgetary restrictions and reorganization and that his employment was terminated. Also on March 11, 2005, a white employee under age 40—Mr. Machamer—was promoted to Assistant Director of Field Service, a newly created position, and another a white employee under age 40—Mr. Baie—was promoted to Field Director. No other employees of DAC were laid off as part of the reorganization or budgetary restrictions, although some apparently resigned their positions voluntarily. On April 1, 2005, a white former employee was hired as the Director of Finance Service. Plaintiff claims he was not considered for this position despite being qualified.

Plaintiff claims he would have been eligible for health and retirement benefits if he had remained in Defendants' employ through February 2006—his 20-year employment anniversary. Plaintiff claims he was illegally terminated or passed over for promotion based on his race/color/national origin, age, and seniority.

On or about April 15, 2005, DAC was placed on notice that Plaintiff believed he had been illegally terminated due to his race/color/national origin, age, and seniority. Plaintiff claims additional positions became available within DAC after his termination, but he was not considered for those positions—although he maintains he was qualified—in retaliation for his decision to pursue his discrimination claims.

Plaintiff filed a complaint on November 9, 2006, claiming: (1) race and national origin discrimination in termination, in violation of Title VII; (2) race and national origin discrimination in termination, in violation of 42 U.S.C. § 1981; (3) age discrimination in termination, in violation

of the ADEA; (4) retaliation in violation of Title VII; (5) retaliation in violation of 42 U.S.C. § 1981; (6) retaliation in violation of the ADEA; and (7) ERISA "retaliation"—which is in actuality a misnomered wrongful termination claim—for terminating Plaintiff before his 20-year benefits package became active.

On August 5, 2008, I granted summary judgment in favor of BSA on all claims and dismissed Plaintiff's claims against BSA in full [**Docket # 117**].

## II. PRESENT MOTION

DAC filed the present motion for summary judgment on March 12, 2008 [**Docket ## 62, 63**]. DAC argues the undisputed material facts show that Plaintiff's position was terminated as part of a legitimate reduction in force to save expenses during a financial crisis. Mr. Herrmann had been in his position as Scout Executive for less than four months when he made the decision to terminate Plaintiff's employment. Mr. Herrmann claims he did not make the decision solely based on his own limited experience working with Plaintiff, but notes that his limited interaction with Plaintiff showed Plaintiff's job performance to be lackluster. Mr. Herrmann claims he also considered input from other DAC personnel who likewise found Plaintiff's job performance to be subpar.

DAC also claims Plaintiff—who was 49 when terminated—would not have been eligible for retirement benefits until he was 55, and that any evidence suggesting consideration of retirement benefits played a part in Plaintiff's termination is too tenuous to survive summary judgment. Accordingly, DAC asserts Plaintiff's termination-related claims—Claims One, Two, Three, and Seven—must be dismissed as against DAC.

3

As to Plaintiff's retaliation claims, DAC argues the evidence shows Plaintiff was not qualified for the positions that became available after April 15, 2005—the date Plaintiff alleges he placed DAC on notice he believed he had been illegally terminated due to his race/color/national origin, age, and seniority. Plaintiff's prior employment evaluations showed Plaintiff to be lacking in several important areas that would be necessary to fill the available positions. DAC argues Mr. Herrmann made his hiring decisions based on feedback he received from other DAC employees—as well as Mr. Herrmann's limited interactions with Plaintiff himself—that suggested Plaintiff was not a suitable person for the available jobs. Accordingly, DAC asserts Plaintiff's retaliation claims—Claims Four, Five, and Six—must also be dismissed as against DAC.

Regarding his termination claims, Plaintiff responds [**Docket # 105**] that his performance reviews were generally favorable, DAC was on budget each year relevant to this action, and Plaintiff's "eliminated" position was actually replaced with two new positions. Plaintiff also responds that—whenever a commissioned professional position is eliminated for financial reasons—DAC policy requires the elimination be approved by both the BSA area director and the BSA regional human services director, neither of whom were consulted in Plaintiff's case. Moreover, DAC policy requires the employee with the longest tenure be retained when a position is downsized for financial reasons—an event which did not occur here. Plaintiff also alleges he was more qualified than the employees who filled the two positions created when his was eliminated, and provides evidence of allegedly racist remarks made by DAC employees, including Mr. Herrmann.

As to the retaliation claims, Plaintiff claims DAC hired three new commissioned

4

professionals in the two months following his decision to pursue his discrimination claims. Plaintiff raises similar issues to those raised in his termination claims, and notes DAC failed to follow its own procedures and policies requiring it to consider candidates within the local council before looking to outside councils. All three new hires were from outside councils.

DAC replies [**Docket # 112**] that the uncontroverted evidence shows DAC was suffering financial difficulties. DAC argues that no procedural irregularities existed because the allegedly violated policies were not mandatory, nor were they followed in every instance. DAC also argues the Court should not second-guess DAC's decision to rely on subjective criteria when making its hiring decisions, and, at any rate, Mr. Herrmann also relied on objective considerations when deciding to terminate Plaintiff over other DAC employees. DAC claims any racially-tinged comments made by DAC employees should be considered "stray remarks" that are insufficient to show evidence of pretext. Finally, DAC points to evidence showing Plaintiff was not qualified for the three positions that became available shortly after his position was eliminated and his employment with DAC terminated.

### III. STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is not proper if—viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor—a reasonable jury could return a verdict for the non-moving party. *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992).

5

In a motion for summary judgment, the moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, *supra*, 477 U.S. at 323 (quoting FED. R. CIV. P. 56(c)). If this burden is met, then the non-moving party has the burden of showing there are genuine issues of material fact to be determined. *See id.* at 322. It is not enough that the evidence be merely colorable; the non-moving party must come forward with specific facts showing a genuine issue for trial. *See id.*; *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). I shall grant summary judgment, therefore, only if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Lucas v. Mountain States Tel. & Tel.*, 909 F.2d 419, 420 (10th Cir. 1990); FED. R. CIV. P. 56(c).

In a motion for summary judgment, I view the evidence "through the prism of the substantive evidentiary burden." *Liberty Lobby*, *supra*, 477 U.S. at 254. The inquiry is based on "the quality and quantity of evidence required by the governing law" and "the criteria governing what evidence would enable the jury to find for either the plaintiff or the defendant." *Id*. Accordingly, in this employment discrimination case, Plaintiff must show material facts in dispute by a preponderance of the evidence in order to defeat DAC's motion for summary judgment. Plaintiff meets this burden if he sets forth evidence that—if believed by the ultimate factfinder—makes the question of DAC's wrongdoing more likely than not.

## IV.  TERMINATION CLAIMS

When a plaintiff relies on circumstantial evidence to prove employment discrimination the Court applies the three-step burden shifting framework set forth in *McDonnell Douglas* and its progeny.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800–07 (1973); *Godwin v. Sw. Research Inst.*, 237 F. App'x 306, 308 (10th Cir. 2007); *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005).  At the first step, the plaintiff must establish a *prima facie* case of a prohibited employment action.  *Plotke*, 405 F.3d at 1099.  If the plaintiff makes out a *prima facie* case, the burden then shifts to the employer to state a legitimate nondiscriminatory reason for the adverse employment action.  *Id*.  If the employer meets this burden, then summary judgment is warranted unless the employee can show the existence of a genuine issue of material fact as to whether the proffered reasons are pretextual. *Id.*

Plaintiff's termination claims fall into three categories: race/color/national origin (Claim One and Claim Two); age (Claim Three); and ERISA avoidance (Claim Seven).

### A.  Race/Color/National Origin Discrimination (Claim One and Claim Two)

A plaintiff can establish a *prima facie* case of race/color/national origin discrimination in a reduction-in-force ("RIF") case—such as this one—by showing that: (1) he belongs to a protected class; (2) he was doing satisfactory work; (3) despite the adequacy of his work, he was discharged; and (4) there is some evidence that the employer intended to discriminate against him in reaching its RIF decision.  *Juarez v. ACS Gov't Solutions Group, Inc.*, 314 F.3d 1243, 1245–46 (10th Cir. 2003).  For purposes of the present motion for summary judgment, DAC concedes Plaintiff made out a *prima facie* case of race/color/national origin discrimination.  Further, DAC—by means of evidence showing Plaintiff's position was terminated due to financial

7

constraints—provides a legitimate nondiscriminatory reason for terminating Plaintiff. *See Furr v. Seagate Tech., Inc.*, 82 F.3d 980, 985 (10th Cir. 1996). Thus, the remaining issue is whether DAC's proffered reason is pretextual.

Although there is no one way to show pretext in a RIF case, a plaintiff can demonstrate pretext in three principal ways: (1) he can show his termination was not in accord with the RIF; (2) he can show the RIF criteria were deliberately falsified or manipulated in order to justify the termination; or (3) he can show that the RIF in general was pretextual. *Pippin v. Burlington Resources Oil & Gas Co.*, 440 F.3d 1186, 1193 (10th Cir. 2006). "This third approach is sometimes satisfied by a showing that the defendant actively sought to replace a number of RIF-terminated employees with new hires during the RIF general time frame." *Id.*; *see Furr*, *supra*, 82 F.3d at 985. Likewise, evidence showing the plaintiff's position was terminated while a similar position held by a non-minority employee was retained can show the RIF justification to be pretextual. *See Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1167–68 (10th Cir. 1998); *Furr*, 82 F.3d at 986.

Plaintiff provides evidence showing DAC was on budget at the end of each year from 2002—when Plaintiff's position was first "slated for elimination"—through 2005 when Plaintiff was actually terminated. Herrmann Depo. 53, 289–90 [**Docket # 105-9**]. Whether an employer chooses to proceed with a reduction-in-force, however, is a business decision, and the financial propriety of business decisions are "not for a court or jury to decide." *See Furr*, *supra*, 82 F.3d at 986. The Court "will not second guess business decisions made by employers, in the absence of some evidence of impermissible motives." *Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1426 (10th Cir. 1993).

8

Plaintiff's protestation of DAC's alleged financial condition aside, however, Plaintiff's other evidence raises a genuine issue of material fact as to whether the RIF was pretextual. Initially, I note Plaintiff's position was the only position eliminated at DAC and Plaintiff was the only employee terminated. When a "reduction-in-force" includes only one employee—and the one employee is a member of a protected class—this is some evidence of pretext. *See Moody v. Pepsi-Colo Metropolitan Bottling Co., Inc.*, 915 F.2d 201, 209 (6th Cir. 1990); *Hillebrand v. M-Tron Indus., Inc.*, 827 F.2d 363, 366–68 (8th Cir. 1987); *Christie v. Foremost Ins. Co.*, 785 F.2d 584, 586–87 (7th Cir. 1986). Evidence proffered by Plaintiff showing Plaintiff's position was replaced with two newly-created positions that were substantially similar to Plaintiff's—and were filled by two white employees under 40 within two weeks of Plaintiff's termination—provides additional evidence of pretext. *See* Herrmann Depo. 74–81 [**Docket # 105-9**]. Although DAC claims other employees would have been terminated had they not voluntarily quit or transferred, this merely rebuts the evidence of pretext and further demonstrates the existence of a material question of fact.

Plaintiff also provides evidence showing the normal course of procedure when a local council made a staff reduction would include consultation with BSA "for guidance and input and review." Cooke Depo. 58 [**Docket # 105-7**]. Nonetheless, BSA was not consulted when the decision to terminate Plaintiff—which, according to DAC's evidence, occurred as early as 2002—was made by DAC. Cooke Depo. 61 [**Docket # 105-7**]. In addition, Plaintiff's evidence shows the normal course of procedure would be to give preference to longer-tenured employees when two employees of similar classification and performance were both considered for staff

9

reduction.  *See* Cooke Depo. 60–61 [**Docket # 105-7**]; *Staff Reduction - Same Classification* [**Docket # 105-17**].  Herrmann testified Plaintiff was replaced by Mr. Machamer—a white employee, under 40, of similar classification and pay rate with performance evaluations that "were close enough to be fairly indistinguishable" from Plaintiff's—even though Plaintiff had several years more Scouting experience.  Herrmann Depo. 74–75, 298 [**Docket # 105-9**].  These deviations from standard operating policy provide additional evidence of pretext.  *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000).

      Plaintiff provides evidence showing his performance evaluations were generally positive, he—unlike the two white, under 40, employees who replaced him—had prior experience in the Field Director position, and had been with the Scouts longer than the two employees who replaced him.  Mr. Herrmann's testimony, on the other hand, states he relied on subjective reasons for replacing Plaintiff—including the opinions of other DAC personnel, and Mr. Herrmann's own impression of Plaintiff's "sense of mission."  Evidence showing an employer considered only certain subjective aspects of an employee's performance evaluations—particularly while ignoring or downplaying other objective qualifications such as time on the job and specific relevant experience—also supports an inference of pretext for discrimination.  *See Mohammed v. Callaway*, 698 F.2d 395, 401 (10th Cir. 1983).  Although DAC's evidence shows Mr. Herrmann received complaints about Plaintiff's job performance and praise of the job performances of Mr. Machamer and Mr. Baie, this merely rebuts the evidence of pretext and further demonstrates the existence of a material question of fact.

      Finally, Plaintiff provides numerous examples of allegedly racist remarks made by current

and former employees of DAC, including Mr. Herrmann. While it is well-established that arguably-racist comments can provide circumstantial evidence of race-based pretext—*see Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 151–53 (2000)—it is equally well-established that "stray remarks" that cannot be linked to personnel decisions do not. *See Heno v. Sprint/United Management Co.*, 208 F.3d 847, 856 (10th Cir. 2000) (discussing cases). As Plaintiff provides sufficient evidence for his race/color/national origin claims to reach a jury without consideration of the alleged comments, however, I need not decide this evidentiary issue here.

B. Age Discrimination

A plaintiff can establish a *prima facie* case of age discrimination by showing he was: (1) within the protected age group; (2) performing his job satisfactorily; (3) discharged; and (4) replaced by a younger person. *Miller v. Eby Realty Group LLC*, 396 F.3d 1105, 1111 (10th Cir. 2005). "In reduction-in-force cases, plaintiffs are simply laid off and thus incapable of proving actual replacement by a younger employee. Consequently, courts have modified the fourth *prima facie* element by requiring the plaintiff to 'produce evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue.' This element may be established through circumstantial evidence that the plaintiff was treated less favorably than younger employees during the reduction-in-force." *Branson v. Price River Coal Co.*, 853 F.2d 768, 771 (10th Cir. 1988) (quoting *Williams v. General Motors Corp.*, 656 F.2d 120, 129 (5th Cir. 1981)). DAC does not dispute Plaintiff has met his *prima facie* burden.

Once a plaintiff establishes his *prima facie* case, the burden shifts to the employer to

show it was motivated by a legitimate nondiscriminatory reason for the adverse action. *James v. Sears, Roebuck & Co., Inc.*, 21 F.3d 989, 992 (10th Cir. 1994). As in Plaintiff's race/color/national origin claims, DAC—by means of evidence showing that Plaintiff's position was terminated due to financial constraints—provides a legitimate nondiscriminatory reason for terminating Plaintiff. *See Furr*, *supra*, 82 F.3d at 985. Thus, the remaining issue is whether DAC's proffered reason is pretextual.

At the pretext stage of an ADEA inquiry, the burden shifts to the plaintiff, who "must show age was also a reason for the employer's decision and 'age was the factor that made a difference.'" *James*, *supra*, 21 F.3d at 992 (quoting *E.E.O.C. v. Prudential Fed. Sav. & Loan Ass'n*, 763 F.2d 1166, 1170 (10th Cir. 1985)). The evidence tending to show DAC's RIF justification to be pretextual in regards to Plaintiff's race/color/national origin claims permits a similar inference here—at least for the purposes of this summary judgment motion—where it is undisputed that Plaintiff was both black and over 40, and was replaced by employees who were both white and under 40. *See Bryant v. Farmers Ins. Exchange*, 432 F.3d 1114, 1125 (10th Cir. 2005). Accordingly, Plaintiff has raised sufficient questions of material fact on his ADEA claim to overcome DAC's motion for summary judgment.

### C. ERISA Avoidance

Plaintiff claims DAC terminated his employment in order to avoid paying benefits that would have accrued when he reached his 20-year anniversary. As applied to the facts here, Section 510 of ERISA makes it "unlawful for any person to discharge, fire, suspend, expel, discipline, or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan."

29 U.S.C. § 1140. In determining whether a plaintiff raises a triable issue of fact under Section 510, the Court uses the three-step burden shifting approach from *McDonnell Douglas*. *See Godwin v. Sw. Research Inst.*, 237 F. App'x 306, 308 (10th Cir. 2007). Accordingly, Plaintiff must first make out a *prima facie* case of a violation of Section 510. *Id*. (citing *Register v. Honeywell Fed. Mfg. & Techs., LLC*, 397 F.3d 1130, 1137 (8th Cir. 2005)). The burden then shifts to DAC to articulate a legitimate, nondiscriminatory reason for Plaintiff's termination. *Id*. Finally, if DAC meets this burden, the burden then shifts back to Plaintiff to show DAC's proffered reason to be pretextual. *Id*.

To establish a *prima facie* case under Section 510, a plaintiff must show: "(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." *See Maez v. Mountain States Tel. & Tel., Inc.*, 54 F.3d 1488, 1504 (10th Cir. 1995) (quoting *Gavalik v. Cont'l Can Co.*, 812 F.2d 834, 852 (3d Cir. 1987)). Since evidence of an employer's motivation is not usually available to an employee, all that a plaintiff must show is that he was in a position in which he was eligible for ERISA benefits, he was qualified for that position, and he was discharged from that position under circumstances that provide some basis for believing the avoidance of ERISA benefits was a factor. *See Turner v. Schering-Plough Corp.*, 901 F.2d 335, 347–48 (3d Cir. 1990); *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1115 (2d Cir. 1988). Circumstances giving rise to an inference of benefits avoidance include temporal proximity between termination and vestment of benefits, differential treatment of similarly situated employees, and evidence that the employer was concerned about the cost of providing future benefits. *See Trujillo v. PacifiCorp.*, 524 F.3d 1149, 1156–57, 1161 (10th Cir. 2008); *Dister*, 859 F.2d at 1115.

13

Plaintiff meets his *prima facie* burden here. Plaintiff's evidence shows his benefits plan would pay 60 percent of his medical premium costs after retirement if he had twenty or more years of service, but only 30 percent if he had ten to twenty years of service. *BSA Benefits: My Benefits* 4 [**Docket # 105-24**]. It is not disputed that Plaintiff would have reached his twentieth year of service in February 2006. It is also not disputed that DAC pays the premium for employee benefits. Accordingly, it cannot be disputed that by terminating Plaintiff in March 2005, DAC would pay only half of what it would be required to pay had Plaintiff been terminated eleven months later. This is amounts to a significant difference and "is certainly circumstantial evidence in support of [P]laintiff's ERISA § 510 claim." *See Babich v. Unisys Corp.*, 859 F. Supp. 454, 457–58 (D. Kan. 1994).

As in Plaintiff's other termination claims, DAC—by means of evidence showing that Plaintiff's position was terminated due to financial constraints—provides a legitimate nondiscriminatory reason for terminating Plaintiff. *See Furr*, *supra*, 82 F.3d at 985. Thus, the remaining issue is whether DAC's proffered reason is pretextual. As with the *prima facie* case, pretext can be shown in a variety of ways including, but not limited to, differential treatment and procedural irregularities. *See Trujillo*, *supra*, 524 F.3d at 1158.

As held in my discussion of Plaintiff's race/color/national origin and age discrimination claims above, Plaintiff provides sufficient evidence of a pretextual justification for the RIF to survive summary judgment. As to Plaintiff's ERISA claim, it is not contested that Plaintiff had more seniority than the other candidates considered for termination and more seniority than the candidates who filled the positions created to replace Plaintiff's position. Accordingly, my findings regarding procedural irregularities and differential treatment apply here as well *See*

*Trujillo*, *supra*, 524 F.3d at 1160-61. Although DAC argues Plaintiff would not be entitled to receive the benefits until he was 55—and, therefore, the six-year date-of-accrual was not sufficiently proximate to give rise to an inference of benefits avoidance—DAC's evidence supporting this position is, at best, ambiguous. At worst, DAC's evidence on this point directly contradicts the plain language of the BSA benefits plan and further highlights the impropriety of summary judgment on this issue. As I must view the evidence in the light most favorable to Plaintiff as the non-moving party and draw all reasonable inferences in his favor, I conclude that a material question of fact exists whether DAC terminated Plaintiff's employment in order to avoid paying benefits that would have accrued when he reached his 20-year anniversary.

## V. RETALIATION CLAIMS

Plaintiff claims DAC retaliated against him by failing to hire him for three positions that became available after April 15, 2005—the date Plaintiff alleges he placed DAC on notice he believed he had been illegally terminated due to his race/color/national origin, age, and seniority. To establish a *prima facie* case of retaliation, Plaintiff must show (1) he engaged in a protected activity, (2) he was subjected to an employment action that a reasonable employee would have found materially adverse, and (3) there was a causal connection between the protected activity and the adverse employment action. *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006); *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262–63 (10th Cir. 1998). Once Plaintiff makes a *prima facie* showing, the burden shifts to DAC to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See McDonnell Douglas*, *supra*, 411 U.S. at 802. If DAC meets this burden, Plaintiff must respond by showing DAC's asserted reasons are pretextual. *See O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1252

(10th Cir. 2001). The test is the same under Title VII, 42 U.S.C. § 1981, and the ADEA. *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1212 (10th Cir. 2008); *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 533 (10th Cir. 1998). For the purposes of this summary judgment motion, DAC does not dispute Plaintiff meets his *prima facie* burden.

The three available positions for which Plaintiff was not hired were: (1) the Director of Field Service position, filled by Jim Hans; (2) the Director of Finance position, filled by Tom Gonzales; and (3) the Endowment Director position, filled by Catherine Zanotti. While Plaintiff argues DAC failed to follow its own hiring practices by filling these positions with commissioned professionals from other local councils, the undisputed evidence shows the Director of Field Service position was a Class 11 position for which Plaintiff—at Class 7—was ineligible; and the Director of Finance position was a Class 10 position for which the hiring of a Class 7 commissioned professional would have been "very unusual." Chandler Depo. 21 [**Docket # 106-4**]; Herrmann Aff. ¶ 22 [**Docket # 63-13**]; Rankin Depo. 63 [**Docket # 106-10**]. Plaintiff directs me to no evidence suggesting he was qualified for such a "very unusual" promotion. Accordingly—as to the Director of Field Service and Director of Finance positions—DAC provides a legitimate nondiscriminatory rationale for failing to hire Plaintiff, and Plaintiff fails to rebut this rationale with any evidence of pretext.

The Endowment Director position filled by Catherine Zanotti, however, was a Class 8 position for which the hiring of a Class 7 commissioned professional would be "common." Chandler Depo. 21 [**Docket # 106-4**]. DAC proffers evidence showing Ms. Zanotti had previous experience as a Finance Director, Assistant Scout Executive, and Director of Finances.

16

Herrmann Aff. ¶ 25 [**Docket # 63-13**]. Mr. Herrmann considered Ms. Zanotti's financial experience to be more relevant to the position of Endowment Director—a position that requires the ability to raise and manage endowment funds—than Plaintiff's experience as a Field Director. Herrmann Aff. ¶ 25 [**Docket # 63-13**]. Accordingly, DAC provides a legitimate nondiscriminatory rationale for failing to hire Plaintiff for the Endowment Director position and the burden is on Plaintiff to show this rationale to be pretextual.

It is not disputed that Ms. Zanotti had not previously been employed with DAC. Accordingly, Plaintiff's pretext argument again largely relies on DAC's alleged failure to follow its own practice of looking to candidates within DAC before looking to candidates from other councils. Plaintiff's evidence of DAC's policy in this regard consists of BSA policy outlined in "the Briefcase"—"a set of guidelines to provide local council Scout executives assistance in personnel matters [and] procedures." Chandler Depo. 45–46 [**Docket # 106-4**]. As noted in my August 5, 2008, Order [**Docket # 117**], however, these "guidelines" are not mandatory, but are issued for the purpose of "helping [a local] council wade through the morass of employment law and employment practices . . . if they choose to follow" them. *See* Chandler Depo. 63–64 [**Docket # 106-4**]. Unlike the evidence showing DAC—in accordance with the Briefcase—normally consulted with BSA when terminating commissioned professionals and normally gave preference to longer-tenured employees when making staff reductions, Plaintiff points me to no evidence showing the "In-Council" hiring guideline was ever put into regular practice at DAC. *See* Cooke Depo. 58–61 [**Docket # 105-7**]. Moreover, Plaintiff points me to no language in the Briefcase requiring a local council to give preference to local commissioned

17

professionals, nor does such language appear to exist based upon my own review. *See Commissioned Professional Promotions and Transfers* [**Docket # 105-17**].

Plaintiff argues pretext is also shown by the fact that Ms. Zanotti was hired for a position for which he alleges he was equally qualified. In order to show pretext, however, Plaintiff must show he was *better* qualified than the candidate eventually hired for the position in question. *Santana v. City and County of Denver*, 488 F.3d 860, 865 (10th Cir. 2007). The Tenth Circuit requires the showing of merit disparity to be "overwhelming." *Id*. Plaintiff does not provide any evidence—let alone "overwhelming" evidence—showing he was more qualified than Ms. Zanotti to fill the Endowment Director position. In contrast, DAC provides evidence showing Ms. Zanotti had specific training making her well-qualified for the position and additional evidence—including Plaintiff's own statements—showing Plaintiff was not qualified. *See* Herrmann Aff. ¶ 25 [**Docket # 63-13**]; Aludo Depo. 125–28 [**Docket # 112-6**].

Finally, Plaintiff again raises the argument—which I previously rejected as it pertains to BSA—that DAC canceled Plaintiff's access to BSA's intranet service "ScoutNET." As noted in my August 5, 2008, Order [**Docket # 117**], Plaintiff's evidence shows that all Boy Scout employees' access to ScoutNET "should be immediately" deactivated "upon the date of termination." Morin Depo. 27–28 [**Docket # 106-9**]. Accordingly, the evidence does not show canceling Plaintiff's ScoutNET access was a retaliatory action on the part of DAC and summary judgment on Plaintiff's retaliation claims is appropriate.

## VI. CONCLUSION

Plaintiff provides sufficient evidence of pretext for discrimination on his Title VII, 42

U.S.C. § 1981, ADEA, and ERISA termination claims to raise a genuine issue of material fact. Accordingly, Denver Area Council, Boy Scouts of America's, Motion for Summary Judgment [**Docket # 62**] is DENIED as to Counts One, Two, Three, and Seven. Plaintiff fails to meet his burden under a retaliation theory, however, because he fails to provide sufficient evidence of pretext for DAC's failure to hire him for available positions after April 15, 2005, to raise a genuine issue of material fact. Accordingly, Denver Area Council, Boy Scouts of America's Motion for Summary Judgment [**Docket # 62**] is GRANTED as to Counts Four, Five, and Six. Counts Four, Five, and Six, are DISMISSED as against Denver Area Council, Boy Scouts of America. Each party shall bear its own costs.

Dated: August 8, 2008.

BY THE COURT:

s/Lewis T. Babcock
Lewis T. Babcock, Judge